**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Frederick J. Klorczyk III (State Bar. No. 320783)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          jsmith@bursor.com
          fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH REVITCH, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>     v.<br><br>NEW MOOSEJAW, LLC and NAVISTONE, INC.,<br><br>               Defendants. | Case No. 3:18-cv-06827-VC<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeremiah Revitch ("Plaintiff"), individually and on behalf of himself and all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action suit brought against Defendants New Moosejaw, LLC ("Moosejaw") and NaviStone, Inc. ("NaviStone") (collectively, "Defendants") for wiretapping the computers of visitors to Defendant Moosejaw's website, Moosejaw.com.  The wiretaps, which are secretly embedded in the computer code on Moosejaw.com, are used by Defendants to scan the user's computer in search of files that can be used to de-anonymize and identify the user, and also to observe visitors' keystrokes, mouse clicks,[1] and other electronic communications in real time for the purpose of gathering Personally Identifiable Information ("PII") to de-anonymize those visitors – that is, to match previously unidentifiable website visitors to obtain their names and home addresses, along with detailed data concerning their browsing habits.  These wiretaps enable Defendants to immediately, automatically, and secretly observe the keystrokes, mouse clicks, and other electronic communications of visitors regardless of whether the visitor ultimately makes a purchase from Moosejaw.  By doing so, Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 632, and 635; have invaded Plaintiff's privacy rights in violation of the California Constitution; have intruded upon the seclusion of Plaintiff; have violated California's Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.*; and have committed other tortious acts as described herein.

2.      On several occasions prior to the filing of this lawsuit, Plaintiff Revitch visited Moosejaw.com.  During each of Plaintiff's visits Defendants scanned his device for files that could be used to de-anonymize and identify him, captured his electronic communications and redirected them to NaviStone in real time, and used the intercepted data to attempt to learn his identity, postal address, and other PII.

---

[1] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe," and similar gestures used on touchscreen devices.

3. Specifically, when browsing Moosejaw.com during the relevant time period, Plaintiff Revitch previously had a cookie placed on his computer from AGKN.com, also known as Aggregate Knowledge, a third-party data broker. This is not an ordinary cookie – it is linked to a database of real-life names, addresses, contact information, browsing habits, and other PII. In turn, upon visiting Moosejaw.com, Defendants' wiretaps scanned Plaintiff Revitch's computer, located the AGKN.com cookie, and coordinated with Aggregate Knowledge to de-anonymize Plaintiff Revitch. *See infra*, at "Defendants' Practice of Scanning Visitors' Computers for De-Anonymizing Files."

4. Furthermore, Plaintiff Revitch visited the "Registration" and "Sign In" pages on Moosejaw.com during the relevant time period. Plaintiff Revitch also reviewed the "Shipping and Billing Policy" and the "Return and Exchange Policy." Plaintiff Revitch also browsed the following items on Moosejaw.com: Patagonia Men's R0 Sun Hoody, Patagonia Men's Insulated Fjord Flannel Jacket, Patagonia Bandana Blue Fjord Insulated, Hestra Juniors' Heli Ski 3 Finger Glove, Crescent Moon EVA The All Foam Snowshoe, Patagonia Men's Tropic Comfort Hoody II, Patagonia Men's RD Long-Sleeved Sun Tee, Icebreaker Men's Pursuit Legless, Five Ten Men's Freerider Shoe, Five Ten Men's Freerider Contact Shoe, and Five Ten Kids' Freerider Shoe. Plaintiff Revitch also viewed a page listing items subject to the "Icebreaker Sale."

5. Mr. Revitch visited Moosejaw.com numerous times in 2017, including on January 8, March 1, several days in April, August 10, and December 8.

6. When conducting these browsing activities, Plaintiff Revitch's key strokes, mouse clicks, and other information were observed by Defendants' wiretaps in real time. For example, Defendants' wiretaps collected the data typed by Plaintiff Revitch into the online forms on Moosejaw.com in real time. *See infra*, at "NaviStone's Wiretaps in Action at Moosejaw.com."

7. In *Brady Cohen v. New Moosejaw, LLC*, Case No. 1:17-cv-09389-WHP (S.D.N.Y.), a resident and citizen of New York, plaintiff Brady Cohen, brought claims under New York law based on substantially similar facts. In its order dismissing Mr. Cohen's claims, the court noted that Mr. Cohen's allegations were "unsettling," "disturbing," and "troubling," but the alleged conduct nonetheless "does not violate any of the [New York] statutes on which Cohen predicates his

1   claims." Here, Plaintiff Revitch is now bringing claims under California's privacy laws.

2       8.      Plaintiff brings this action on behalf of himself and a class of all persons whose

3   electronic communications were intercepted through the use of NaviStone's wiretap on

4   Moosejaw.com.

5                                   **THE PARTIES**

6       9.      Plaintiff Jeremiah Revitch is a natural person and citizen of the State of California who

7   resides in Mill Valley, California.  Throughout 2017, Mr. Revitch browsed Defendant Moosejaw's

8   website at Moosejaw.com.  During each of these visits, Mr. Revitch browsed Moosejaw.com

9   because he intended to purchase outerwear.  Although Mr. Revitch never consented to any

10  interception, disclosure or use of his electronic communications, Mr. Revitch's keystrokes, mouse

11  clicks, and other electronic communications were intercepted in real time and were disclosed to

12  NaviStone through Moosejaw's use of NaviStone's wiretap.  In doing so, Defendants gathered Mr.

13  Revitch's PII, including his keystrokes, mouse clicks, and other electronic communications.

14  Defendants also scanned Mr. Revitch's computer in search of files that could be used to de-

15  anonymize him.  As a result of these activities, Defendants then de-anonymized and identified Mr.

16  Revitch as a visitor to Moosejaw.com.  Mr. Revitch was unaware at the time that his keystrokes,

17  mouse clicks, and other electronic communications were being intercepted and disclosed to a third

18  party.  Mr. Revitch learned of these facts in December 2017.  Mr. Revitch had a reasonable

19  expectation of privacy when browsing Moosejaw.com, in that he never expected that his keystrokes,

20  mouse clicks, and other electronic communications were being intercepted and disclosed to a third

21  party, or that Defendants would de-anonymize and identify him as a result of his browsing.

22      10.     Defendant New Moosejaw, LLC is a Delaware limited liability company with its

23  principal place of business at 32200 North Avis Suite 100, Madison Heights, Michigan.  Moosejaw

24  does business throughout California and the entire United States.  "Moosejaw is a leading online

25  active outdoor retailer with a large web presence as well at 10 physical stores."[2]  "Moosejaw carries

26  more than 400 brands, including Patagonia, The North Face, Marmot, Arc'teryx and more.

27

28  [2] https://news.walmart.com/2017/02/15/walmart-announces-the-acquisition-of-moosejaw-a-leading-online-outdoor-retailer

---

1 [Moosejaw] ha[s] an extensive assortment of apparel and gear for climbing, hiking, camping, snow

2 sports, yoga, swimming and biking."[3]

3      11.     Defendant NaviStone, Inc. is a Delaware corporation with its principal place of

4 business at 1308 Race Street, Cincinnati, Ohio 45202.  NaviStone does business throughout

5 California and the entire United States.  NaviStone is an online marketing company and data broker

6 that deals in U.S. consumer data.

7 **JURISDICTION AND VENUE**

8      12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)

9 because this case is a class action where there are more than 100 members in the Class, the

10 aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of

11 interest and costs, and Plaintiff, together with most members of the proposed class, are citizens of

12 states different from Defendants.

13      13.     This Court has personal jurisdiction over Defendants because they have continuous

14 and systematic contacts with the State of California as to essentially render them "at home" in this

15 State.  Moreover, each of the Defendants have purposefully availed themselves of the laws and

16 benefits of doing business in this State, and Plaintiff's claims arise out of each of the Defendants'

17 forum-related activities.  Furthermore, a substantial portion of the events giving rise to Plaintiff's

18 claims occurred in this District.

19      14.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a

20 substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this

21 District.  Moreover, Plaintiff resides in this District.

22 **FACTS COMMON TO ALL CLAIMS**

23 **Overview Of NaviStone's Wiretaps**

24      15.     Defendant NaviStone is a marketing company and data broker that deals in U.S.

25 consumer data.  NaviStone's business model involves entering into voluntary partnerships with

26 various e-commerce websites.  Upon partnering with NaviStone, these e-commerce websites will

27

28    [3] *Id.*

SECOND AMENDED CLASS ACTION COMPLAINT               4
CASE NO. 3:18-CV-06827-VC

agree to insert a small parcel of computer code into their websites, which is provided by NaviStone (and is written by NaviStone).  This small parcel of computer code serves as a so-called "back door" in computer terminology – its function is to retrieve and execute a much larger portion of JavaScript code that is remotely hosted on NaviStone's servers.  As NaviStone explains on navistone.com, "[a]dding a simple line of code to each page of your website enables a wealth of new marketing data."

16.     This "back door" code permits NaviStone to execute its own computer code on the websites of its e-commerce partners.  Stated otherwise, the "simple line of code" that NaviStone requests its partners add "to each page of [their] website[s]" serves to call and execute remote computer code that is:  (i) provided by NaviStone, (ii) written by NaviStone, and (iii) hosted on a remote server by NaviStone.

17.     As currently deployed, NaviStone's remote code functions as a wiretap.  That is, when connecting to a website that runs this remote code from NaviStone, a visitor's IP address and other PII is sent to NaviStone in real-time.  NaviStone's code also scans the visitor's computer for data files that could reveal the visitor's identity.  NaviStone's code will also spy on the visitor as he or she browses the website, capturing and redirecting the visitor's keystrokes, mouse clicks and other electronic communications to NaviStone.  This real-time interception and transmission of visitors' electronic communications begins as soon as the visitor loads Moosejaw.com into their web browser.  The intercepted communications include, among other things, information typed on forms located on Moosejaw.com, regardless of whether the user completes the form or clicks "Submit."  NaviStone then uses this information to attempt to de-anonymize website visitors.

18.     NaviStone coordinates with additional entities who maintain back-end databases containing data and profiles on consumers across the U.S., which includes consumers' names and mailing addresses.  As users browse the various e-commerce websites that deploy NaviStone code, NaviStone attempts to "match" elements of the intercepted data with records of real-life people maintained in the back-end databases.  Once a match is found, NaviStone de-anonymizes the user and updates the back-end databases with the user's current browsing activities and PII.

19.     NaviStone has partnered with hundreds e-commerce websites since beginning its

1    operations.  By combining and correlating its data, NaviStone can watch consumers as they browse

2    hundreds of participating e-commerce sites, in real-time.

3        20.    Pursuant to an agreement with NaviStone, Moosejaw intentionally embedded

4    NaviStone's software coded wiretaps on Moosejaw.com in order to scan visitors' computers for

5    files that could be used to identify them, and also to intercept visitors' communications to obtain de-

6    anonymized PII of visitors to Moosejaw's website.

7        21.    NaviStone obfuscates the wiretap codes through dummy domains to attempt to

8    conceal is activities.  For example, part of NaviStone's remote code running on the Moosejaw

9    website was located at http://code.murdoog.com/onetag/C1DFC24D045BDD.js.

10       22.    On June 20, 2017, a leading tech news website, gizmodo.com, published an exposé

11   on NaviStone's wiretaps entitled "Before You Hit 'Submit,' This Company Has Already Logged

12   Your Personal Data."[4]  The Gizmodo article describes NaviStone as "a company that advertises its

13   ability to unmask anonymous website visitors and figure out their home addresses."[5]  The article

14   revealed that NaviStone is "in the business of identifying 'ready to engage' customers and matching

15   'previously anonymous website visitors to postal names and addresses.'  [NaviStone] says it can

16   send postcards to the homes of anonymous website shoppers within a day or two of their visit, and

17   that it's capable of matching '60-70% of your anonymous site traffic to Postal names and

18   addresses.'"[6]

19       23.    Indeed, on its own website, NaviStone boasts that it "invented progressive website

20   visitor tracking technology," which allows it to "reach [] previously unidentifiable website

21   visitors."[7]  According to NaviStone, "[b]y simply adding one line of code to each website page, you

22   can unlock a new universe of 'ready to engage' customers."[8]

23       24.    NaviStone also explains how to implement this software wiretaps on its clients'

24   _____

25   [4] https://gizmodo.com/before-you-hit-submit-this-company-has-already-logge-1795906081

     [5] *Id.*

26   [6] *Id.*

27   [7] https://www.navistone.com/

28   [8] *Id.*

webpages:

> 1:    Insert One Line Of Code On Each Webpage.
> We'll provide you and your IT team with a short tracking code (and instructions) to insert on *each page* of your website.
> Data collection begins immediately and is reviewed for quality by our staff.
>
> 2:    Identify Engaged Website Visitors.
> Data is stored in a secure environment specifically dedicated to your company's information.  Website visitors are identified as direct marketing prospects or reactivation targets based on their level of engagement on your site, as identified by unique algorithms developed by our data scientists.
>
> 3:    Identify Verified Names and Addresses.
> When unidentified website visitors show an intent to purchase based on the modeling process described above, NaviStone® will secure postal names and addresses to include in your direct marketing prospecting and reactivation programs.  …
>
> 4:    Use, Expand, Repeat.
> NaviStone® will continue to track website behavior to identify new, unique prospects and reactivation targets so you can expand and optimize this unique process for success time and time again.[9]

25.    NaviStone's wiretaps intercept communications in real time.  As *Gizmodo* put it, "before you hit 'submit,' this company has already logged your personal data."[10]  *Consumerist* also shared the same concern: "these forms collect your data even if you don't hit 'submit.'"[11]

26.    NaviStone's wiretaps are engaged as soon as the visitor arrives at Moosejaw.com. By merely loading the main page on Moosejaw.com, with no other action, the visitor is connected to NaviStone's wiretaps, which scan visitors' computers for identifying information, and also intercept and monitor their communications.

27.    Since NaviStone's wiretaps engage as soon as the visitor arrives at the main page of Moosejaw.com, website visitors are not provided with an opportunity to review any privacy

---

[9] https://www.navistone.com/how-it-works

[10] https://gizmodo.com/before-you-hit-submit-this-company-has-already-logge-1795906081

[11] https://consumerist.com/2017/06/29/these-forms-collect-your-data-even-if-you-dont-hit-submit/

1   policies or disclosures prior to deployment of the wiretaps.  By the time a user reaches the privacy

2   policy, the wiretaps have already been deployed, and the de-anonymization has already occurred.

3        28.   As the visitor interacts with Moosejaw.com, for example, by adding an item to a

4   shopping cart, typing information onto a form, viewing an item, etc., all of these communications

5   are captured and redirected to NaviStone in real time, through the wiretaps.  Indeed, as will be

6   demonstrated below, when NaviStone's code is deployed on a webpage that contains an online

7   form – such as a "sign up" page or an "account registration" page – the data is captured and

8   redirected to NaviStone as it is typed.  Visitors do not need click "Submit" on the form, or take any

9   other action, for their communications to be intercepted and disclosed to NaviStone.

10        29.   NaviStone's wiretaps are deployed on hundreds of e-commerce websites.  Upon

11   information and belief, NaviStone maintains and correlates its back-end database of User Data and

12   PII across these hundreds of websites.  For example, assume that Site X and Site Y are both running

13   NaviStone's wiretaps.  Now, assume that a user provides her name and phone number to Site X, but

14   *not* to Site Y.  Through the use of NaviStone's wiretaps and back-end database, NaviStone can de-

15   anonymize the user on Site Y and know her name and phone number, even though she never

16   provided that information to Site Y.

17   **NaviStone's Wiretaps In Action On Moosejaw.com**

18        30.   Some aspects of the operation of NaviStone's wiretaps on the Moosejaw.com

19   website can be observed using the Developer Tools Window in the Google Chrome browser.  In the

20   images below, the Moosejaw.com website, as it appears normally through the browser is shown in

21   the left-hand side of the window, while the Developer Tools Network View, showing incoming and

22   outgoing transmissions, is shown in the right-hand window.

23

24

25

26

27

28

---

SECOND AMENDED CLASS ACTION COMPLAINT                                                  8
CASE NO. 3:18-CV-06827-VC

1    31.    When Moosejaw.com is loaded into a browser, the website automatically retrieves a

2  computer file located on a remote server.  One such example is the computer file named

3  "C1DFC24D045BDD.js," which was hosted at http://code.murdoog.com/onetag/



32.     The file "C1DFC24D045BDD.js" is 24.9 KB in size and contains computer code written in a language called JavaScript.  It appears as such:



The top line of the code contains a comment indicating that it is to be used on "Moosejaw.com." However, the remainder of the code lacks comments, explanations, proper indenting, or intelligible names for variables.  Essentially, this code is obfuscated.

33.     The domain "code.murdoog.com," which deploys this code, is owned and operated by NaviStone.

34.     Next, the code in C1DFC24D045BDD.js is executed, with no further actions by the user, or prompting by Moosejaw or NaviStone.  This immediately begins intercepting the visitors' electronic communications and transmitting them to https://apis.murdoog.com/



35.     The domain "apis.murdoog.com" is also owned and operated by NaviStone.

36.     The intercepted communications are encoded in a format called Base64.  When decoded, they appear as such:

{"v":"4d27f1a2-866c-4a6e-8dff-0e25babe177b","m":"08ec4766-4a7a-464d-a6c8-0b021c10124e","csi":2003644151,"se":"86d1748b-f3ea-48e2-9cf0-5a45c85d699b","p":"e6cb9e61-fa6c-4e44-83eb-58f9ee2d5e6a","u":"https://www.moosejaw.com/moosejaw/shop/home____","pn":"/moosejaw/shop/home____","t":"North Face Jackets | Patagonia Jackets | Arcteryx Jackets | Mountain Hardwear","c":"https://www.moosejaw.com/moosejaw/shop/home____","pr":"B2926D","eid":"ns_seg_100","sid":"30594e2641630c11abd0dd73b8c4061e","s":2,"vs":1,"l":"Action","v01":"Eid","v02":"ns_seg_100"}

1   Based on information and belief, other portions of these intercepted data (which are obfuscated

2   such that they are machine-readable but are not readable by humans) include a timestamp, an ID

3   number, the user's IP address, and other PII.

4         37.   NaviStone's wiretap also monitors the user as he or she browses Moosejaw.com.

5   The wiretaps will report every page visited by the user and any items the user added to his or her

6   online shopping cart.  Assume that a visitor is interested in a "Moosejaw Men's The Jack Pullover

7   Hoodie," and adds it to his or her shopping cart:



21   This activity is immediately communicated to NaviStone as such:

{"v":"4d27f1a2-866c-4a6e-8dff-0e25babe177b","m":"08ec4766-
4a7a-464d-a6c8-0b021c10124e","csi":1841982919,"se":"86d1748b-
f3ea-48e2-9cf0-5a45c85d699b","p":"74ff4509-26a4-4c4c-88ce-
68a9e3793d7a","u":"https://www.moosejaw.com/moosejaw/shop/pro
duct_Moosejaw-Men-s-The-Jack-Pullover-
Hoody_10273018_10208_10000001_-
1_","pn":"/moosejaw/shop/product_Moosejaw-Men-s-The-Jack-
Pullover-Hoody_10273018_10208_10000001_-
1_","r":"https://www.moosejaw.com/moosejaw/shop/search_Mens-
Hoodies____","t":"Moosejaw Men's The Jack Pullover Hoody - at
Moosejaw.com","c":"https://www.moosejaw.com/moosejaw/pro

1                    duct_Moosejaw-Men-s-The-Jack-Pullover-
Hoody_10273018_10208_10000001_-

2                    1_","pr":"B2926D","eid":"ns_seg_100","sid":"30594e2641630c11abd
0dd73b8c4061e","s":3,"vs":7,"l":"Action","v01":"AddToCart","v03":

3                    "CartClick","v04":"/moosejaw/shop/product_Moosejaw-Men-s-The-
Jack-Pullover-Hoody_10273018_10208_10000001_-1_"}qem$q

38. When filling out forms, any PII the user provides is immediately, automatically, and secretly transmitted to NaviStone in real-time. Here, the user has just arrived on the "Checkout" page, and has not entered any information yet:



39.     Now, the user has entered his name "John."  A transmission is automatically, immediately, and secretly made to NaviStone:

40.     Now, the user has entered his address at "123 State Street."  Again, another transmission is automatically, immediately, and secretly made to NaviStone:



41.     By intercepting these communications, NaviStone is able to learn the identity of the visitor.  As NaviStone boasts, it is capable of matching "60-70% of your anonymous site traffic to Postal names and addresses."[12]

**<u>Defendants' Practice Of Scanning Visitors' Computers For De-Anonymizing Files</u>**

42.     In conjunction with – and in addition to – the activities described above, Defendants' wiretaps also scan visitors' computers for files that can be used to de-anonymize and identify the visitor.

43.     To accomplish this task, Defendants coordinate with additional third-party data brokers, such as Aggregate Knowledge.  Aggregate Knowledge maintains a back-end database containing consumers' real names, addresses, contact information, browsing habits, and other PII.

44.     When visiting certain websites partnered with Aggregate Knowledge, such as

_____

[12] _Id._

Kelty.com, a cookie will be placed on the visitor's computer from "AGKN.com." This is not an ordinary cookie, and has features that consumers would not expect from ordinary cookies. Rather, the AGKN.com cookie from Aggregate Knowledge contains an identification number for the visitor, which is linked to an entry in Aggregate Knowledge's back-end database. As the visitor enters his or her personal information on websites like Kelty.com (*e.g.*, by submitting one's shipping and billing information), the database is updated with the visitor's real name, address, and contact information. Entities like Aggregate Knowledge have deployed these cookies on a handful of participating retail and e-consumer websites.

45. In turn, when the user visits Moosejaw.com, Defendants' wiretaps will then scan the users' computer for cookies, such as AGKN.com, that can be used in conjunction with these third-party data brokers to de-anonymize and identify the visitor. If such a cookie is found, Defendants' wiretaps will transmit the cookie and identification number to the data broker (*e.g.*, Aggregate Knowldege), who will then notify Defendants of the visitor's real name, address, contact information, and browsing habits.

46. In contrast to the AKGN.com cookie, run-of-the-mill cookies that consumers might be familiar with do not de-anonymize consumers and play no role in monitoring keystrokes and mouse clicks.

**Other Allegations Common To All Claims**

47. Defendants, as corporations, are "persons."

48. Plaintiff's and Class Members' keystrokes, mouse clicks, and other interactions with Moosejaw.com are "electronic communications."

49. For at least some of the communications at issue, neither Moosejaw nor NaviStone was an intended recipient of the communication. For example, Mr. Revitch has never made any purchase from Moosejaw. Thus, any datafiles retrieved from his device, or any information he may have typed onto forms without clicking submit, or any keystrokes, mouse clicks, or similar touch gestures intercepted through the wiretaps, were communications with Mr. Revitch's Internet service provider for the purpose of accessing web content, and were not communications with Moosejaw or NaviStone. They were not communications to which Moosejaw or NaviStone were intended to be

1    parties.

2          50.    At the time Defendants implemented the wiretaps on Moosejaw.com, they intended

3    to commit tortious acts including disclosures of the intercepted information which violated the

4    California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632, and 635; violated the privacy

5    rights under the California Constitution; and violated California's Consumers Legal Remedies Act,

6    Civil Code §§ 1750, *et seq.*

7          51.    Defendants' actions complained of herein, including secretly and instantaneously

8    capturing and redirecting the keystrokes, mouse clicks, and other electronic communications of

9    website visitors, are not necessary practices for owners, operators, and developers of Internet

10   websites, nor are they incidental to the act of facilitating a website or e-commerce transactions.

11   None of these actions was undertaken in the ordinary course of business.  On the contrary, these

12   actions are contrary to the legitimate expectations of website visitors, and are contrary to established

13   industry norms.  So much so that they were the subject of multiple exposés in industry publications,

14   as discussed above.

15         52.    Defendants' actions are and have been intentional as evidenced by, *inter alia*, their

16   design and implementation of the software wiretaps on Moosejaw.com, their use of wiretaps to

17   access files on visitors' computers that are unrelated to the Moosejaw.com website, and their

18   disclosures and uses of the intercepted data files and communications for profit.

19         53.    Defendants' actions are not part of routine Internet functionality.  Wiretaps are not

20   necessary or needed to operate an e-commerce website.  The NaviStone code is novel.

21         54.    Visitors have a reasonable expectation of privacy when browsing Moosejaw.com, in

22   that they never expect that their keystrokes, mouse clicks, and other electronic communications

23   were being intercepted and disclosed to a third party, or that Defendants would de-anonymize and

24   identify them as a result of their browsing.

25         55.    Defendants maintain records of the visitors they have wiretapped and de-

26   anonymized, either through their own computer systems or through third-party contractors.

27   //

28   //

## CLASS ACTION ALLEGATIONS

56.     Plaintiff seeks to represent a class all persons in the State of California whose electronic or stored communications were intercepted through the use of NaviStone's wiretaps on Moosejaw.com (the "Class").

57.     Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

58.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 632, and 635; have invaded Plaintiff's privacy rights in violation of the California Constitution; have intruded upon the seclusion of Plaintiff; have violated California's Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.*; and have committed other tortious acts as described herein.

59.     The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, visited Moosejaw.com and had his electronic communications intercepted and disclosed to NaviStone through the use of NaviStone's wiretaps.

60.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

61.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex

1   legal and factual issues of this case.  Individualized litigation also presents a potential for

2   inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer

3   management difficulties and provides the benefits of single adjudication, economy of scale, and

4   comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment

5   of the liability issues will ensure that all claims and claimants are before this Court for consistent

6   adjudication of the liability issues.

7       62.    Plaintiff brings all claims in this action individually and on behalf of members of the

8   Class against Defendants.

### COUNT I
### Violation Of The California Invasion Of Privacy Act,
### Cal. Penal Code § 631

11      63.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set

12  forth herein.

13      64.    Plaintiff brings this claim individually and on behalf of the members of the proposed

14  Class against Defendants.

15      65.    California Penal Code § 631(a) provides, in pertinent part:

Any person who … willfully and without the consent of all parties to
the communication, or in any unauthorized manner, reads, or attempts
to read, or to learn the contents or meaning of any message, report, or
communication while the same is in transit or passing over any wire,
line, or cable, or is being sent from, or received at any place within
this state; or who uses, or attempts to use, in any manner, or for any
purpose, or to communicate in any way, any information so obtained,
or who aids, agrees with, employs, or conspires with any person or
persons to lawfully do, or permit, or cause to be done any of the acts
or things mentioned above in this section, is punishable by a fine not
exceeding two thousand five hundred dollars ….

24      66.    At all relevant times, by implementing NaviStone's wiretaps on Moosejaw.com,

25  each Defendant intentionally accessed, intercepted, read, learned, and/or collected the electronic

26  communications of Plaintiff and Class Members, and procured the other Defendant to do so.

27      67.    When visiting Moosejaw.com, Plaintiff and Class Members had an objectively

28  reasonable expectation of privacy.  Plaintiff and Class Members did not reasonably expect that

1  Defendants would intentionally access, intercept, read, learn, and collect Plaintiff and Class

2  Members' electronic communications.

3     68. Plaintiff and Class Members did not consent to any of Defendants' actions in

4  implementing NaviStone's wiretaps on Moosejaw.com.  Nor have Plaintiff or Class Members

5  consented to Defendants' intentional access, interception, reading, learning, and collection of

6  Plaintiff and Class Members' electronic communications.

7     69. Plaintiff and Class Members have suffered loss by reason of these violations,

8  including, but not limited to, violation of the right of privacy and loss of value in their PII.

9     70. Unless restrained and enjoined, Defendants will continue to commit such illegal acts.

10     71. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured

11  by the violations of Cal. Penal Code § 631, and each seek damages for the greater of $5,000 or three

12  times the amount of actual damages, as well as injunctive relief.

### COUNT II
### Violation Of The California Invasion Of Privacy Act,
### Cal. Penal Code § 632

15     72. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set

16  forth herein.

17     73. Plaintiff brings this claim individually and on behalf of the members of the proposed

18  Class against Defendants.

19     74. California Penal Code § 632(a) provides, in pertinent part:

> A person who, intentionally and without the consent of all parties to a
> confidential communication, uses an electronic amplifying or
> recording device to eavesdrop upon or record the confidential
> communication, whether the communication is carried on among the
> parties in the presence of one another or by means of a telegraph,
> telephone, or other device, except a radio, shall be punished by a fine
> not exceeding two thousand five hundred dollars ….

26     75. Defendants are "persons" under the California Invasion of Privacy Act.

27     76. At all relevant times, by implementing NaviStone's wiretaps on Moosejaw.com,

28  each Defendant intentionally used an electronic amplifying or recording device to eavesdrop upon

1    and record the confidential communications of Plaintiff and Class Members, and procured the other

2    Defendant to do so.

3        77.    When visiting Moosejaw.com, Plaintiff and Class Members had an objectively

4    reasonable expectation of privacy.  Plaintiff and Class Members did not reasonably expect that

5    Defendants would intentionally use an electronic amplifying or recording device to eavesdrop upon

6    and record the confidential communications of Plaintiff and Class Members.

7        78.    Plaintiff and Class Members did not consent to any of Defendants' actions in

8    implementing NaviStone's wiretaps on Moosejaw.com.  Nor have Plaintiff or Class Members

9    consented to Defendants' intentional use of an electronic amplifying or recording device to

10   eavesdrop upon and record the confidential communications of Plaintiff and Class Members.

11       79.    Plaintiff and Class Members have suffered loss by reason of these violations,

12   including, but not limited to, violation of the right of privacy and loss of value in their PII.

13       80.    Unless restrained and enjoined, Defendants will continue to commit such illegal acts.

14       81.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured

15   by the violations of Cal. Penal Code § 632, and each seek damages for the greater of $5,000 or three

16   times the amount of actual damages, as well as injunctive relief.

17                          **COUNT III**
                **Violation Of The California Invasion Of Privacy Act,**
18                    **Cal. Penal Code § 635**

19       82.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set

20   forth herein.

21       83.    Plaintiff brings this claim individually and on behalf of the members of the proposed

22   Class against Defendants.

23       84.    California Penal Code § 635 provides, in pertinent part:

24

25       Every person who manufactures, assembles, sells, offers for sale,
         advertises for sale, possesses, transports, imports, or furnishes to
26       another any device which is primarily or exclusively designed or
         intended for eavesdropping upon the communication of another, or
27       any device which is primarily or exclusively designed or intended for
         the unauthorized interception or reception of communications
28       between cellular radio telephones or between a cellular radio

---

SECOND AMENDED CLASS ACTION COMPLAINT                                21
CASE NO. 3:18-CV-06827-VC

telephone and a landline telephone in violation of Section 632.5, or communications between cordless telephones or between a cordless telephone and a landline telephone in violation of Section 632.6 , shall be punished by a fine not exceeding two thousand five hundred dollars ….

85.　At all relevant times, by implementing NaviStone's wiretaps on Moosejaw.com, each Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another, and procured the other Defendant to do so.

86.　NaviStone's code is a "device" that is "primarily or exclusively designed" for eavesdropping.  That is, the NaviStone code is designed to gather PII, including keystrokes, mouse clicks, and other electronic communications.  The NaviStone code is also designed to scan visitors' computers in search of files that could be used to de-anonymize them.

87.　When visiting Moosejaw.com, Plaintiff and Class Members had an objectively reasonable expectation of privacy.

88.　Plaintiff and Class Members did not consent to any of Defendants' actions in implementing NaviStone's wiretaps on Moosejaw.com.

89.　Plaintiff and Class Members have suffered loss by reason of these violations, including, but not limited to, violation of the right of privacy and loss of value in their PII.

90.　Unless restrained and enjoined, Defendants will continue to commit such illegal acts.

91.　Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by the violations of Cal. Penal Code § 635, and each seek damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

## COUNT IV
## Invasion Of Privacy Under California's Constitution

92.　Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

93.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

94.     Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

95.     At all relevant times, by implementing NaviStone's wiretaps on Moosejaw.com, each Defendant intentionally invaded Plaintiff and Class Members' privacy rights under the California Constitution, and procured the other Defendant to do so.

96.     Plaintiff and Class Members had a reasonable expectation that their PII and other data would remain confidential and that Defendants would not install wiretaps on Moosejaw.com.

97.     Plaintiff and Class Members did not consent to any of Defendants' actions in implementing NaviStone's wiretaps on Moosejaw.com.

98.     This invasion of privacy is sufficiently serious in nature, scope and impact.

99.     This invasion of privacy constitutes an egregious breach of the social norms underlying the privacy right.

## COUNT V
## Invasion Upon Seclusion

100.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

101.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

102.     At all relevant times, by implementing NaviStone's wiretaps on Moosejaw.com, each Defendant intentionally intruded upon the seclusion of Plaintiff and Class Members, and procured the other Defendant to do so.

103.     Defendants' deception was deliberate.

104.     When visiting Moosejaw.com, Plaintiff and Class Members had an objectively reasonable expectation of privacy.

105.     Plaintiff and Class Members did not consent to any of Defendants' actions in implementing NaviStone's wiretaps on Moosejaw.com.

106.     Defendants' intentional intrusion on Plaintiff's and Class Members' solitude or seclusion without consent would be highly offensive to a reasonable person.

**COUNT VI**
**Violation Of California's Consumers Legal Remedies Act,**
**Civil Code §§ 1750, *et. seq.***

107.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

108.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

109.     CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendants violated this provision by representing that their website and online services have characterics, uses, and benefits which they do not have.

110.     Given that Defendant Moosejaw is a retailer of clothing and outerwear, visitors to Moosejaw.com plainly intend to browse the site to review Moosejaw's clothing and outerwear offerings.

111.     During each of these visits, Mr. Revitch browsed Moosejaw.com because he intended to purchase outerwear.

112.     At the time Defendants made their misrepresentations and omissions, they were aware that they had installed a wiretap on Moosejaw.com.

113.     Plaintiff and Class members suffered injuries caused by Defendants' misrepresentations and omissions because: (a) Plaintiff suffered an invasion of his privacy as a

result of Defendants' wiretap on Moosejaw.com, and (b) Plaintiff was deprived of any income that Defendants generated through their unauthorized use or sale of Plaintiff's data.

114.    Prior to the filing of this Complaint, a pre-suit notice letter was served on Defendants that complied in all respects with California Civil Code § 1782(a).  On November 9, 2018, Plaintiff Revitch, by and through his counsel, sent Defendants letters via certified mail, return receipt requested, advising Defendants they were in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770.

115.    Pursuant to California Civil Code § 1780(d), attached is an affidavit showing this is the proper forum.

116.    Wherefore, Plaintiff seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendants' acts and practices, as well as injunctive relief for this violation of the CLRA in the form of a Court order requiring Defendants to immediately case their wiretap activity and purge their extant data acquired through the wiretaps on Moosejaw.com.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.    For an order certifying the Class under Rule 23 and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.    For an order declaring that the Defendants' conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.    For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

1       h.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and

2       expenses and costs of suit.

3   **<u>DEMAND FOR TRIAL BY JURY</u>**

4       Plaintiff demands a trial by jury of all issues so triable.

5   Dated: May 22, 2019                Respectfully submitted,

6                             **BURSOR & FISHER, P.A.**

7                             By:    /s/ *L. Timothy Fisher*

8                                     L. Timothy Fisher

9                             L. Timothy Fisher (State Bar No. 191626)

10                            Joel D. Smith (State Bar No. 244902)
    Frederick J. Klorczyk III (State Bar. No. 320783)

11                            1990 North California Boulevard, Suite 940
    Walnut Creek, CA 94596

12                            Telephone: (925) 300-4455
    Facsimile:  (925) 407-2700

13                            E-Mail: ltfisher@bursor.com
           jsmith@bursor.com

14                                    fklorczyk@bursor.com

15                          **BURSOR & FISHER, P.A.**
    Scott A. Bursor (State Bar No. 276006)

16                            2665 S. Bayshore Dr., Suite 220
    Miami, FL 33133-5402

17                            Telephone: (305) 330-5512
    Facsimile: (305) 676-9006

18                            E-Mail: scott@bursor.com

19                          *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28