**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          jsmith@bursor.com
          ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar. No. 320783)
888 Seventh Avenue
New York, NY  10019
Telephone: (636) 837-7150
Facsimile:  (212) 989-9163
E-Mail: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH REVITCH | Case No. 3:18-cv-06827-VC |
| Plaintiff, | |
| v. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| NAVISTONE, INC., | |
| Defendant. | |
| | Date:        June 10, 2021 |
| | Time:        2:00 p.m. |
| | Courtroom:   4 |
| | Judge:       Hon. Vince Chhabria |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 10, 2021 at 2:00 p.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Courtroom 4, 17th Floor in the Courtroom of Judge Vince Chhabria, Plaintiff Jeremiah Revitch ("Plaintiff") will and hereby does move the Court for an order granting full or partial summary judgment in his favor pursuant to Federal Rule of Civil Procedure 56.  This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Joel D. Smith, all supporting exhibits, the pleadings and papers on file, and upon such matters as may be presented to the Court at the time of the hearing.

**CIVIL LOCAL RULE 7-4(a)(3) STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should grant summary judgment, or in the alternative partial summary judgment, in favor of Plaintiff with respect to his claim under California Penal Code § 631(a).

2.      Whether the Court should grant summary judgment, or in the alternative partial summary judgment, in favor of Plaintiff with respect to his claim under California Penal Code § 635.

3.      Whether the Court should grant summary judgment, or in the alternative partial summary judgment, in favor of Plaintiff with respect to Defendant NaviStone, Inc.'s counterclaim for declaratory relief.


Dated:  April 1, 2021                    **BURSOR & FISHER, P.A**.

                                         By: ___*/s/ Joel D. Smith*_____
                                                Joel D. Smith

                                         L. Timothy Fisher (State Bar No. 191626)
                                         Joel D. Smith (State Bar No. 244902)
                                         Neal J. Deckant (State Bar No. 322946)
                                         1990 North California Boulevard, Suite 940
                                         Walnut Creek, CA  94596
                                         Telephone: (925) 300-4455
                                         E-Mail: ltfisher@bursor.com
                                                  jsmith@bursor.com
                                                  ndeckant@bursor.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar. No. 320783)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133-5402
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PAGE(S)

I.   INTRODUCTION ...........................................................................................................1

II.  ARGUMENT ................................................................................................................1

    A.   The Court Should Grant Summary Judgment In Favor Of Plaintiff
On His Claim Under Cal. Penal Code § 631(a) .............................................1

        1.   Issue No. 1: NaviStone's Software Is A "Machine, Instrument
… Contrivance," Or "Other Manner" Under § 631(a). ...................1

        2.   Issue No. 2:  NaviStone Acted Willfully ....................................2

        3.   Issue No. 3:  NaviStone Acted Without Plaintiff's Consent .........3

        4.   Issue No. 4:  NaviStone Read The Contents Or Meaning Of
Visitors' Communications On Moosejaw.Com While The
Same Were In Transit, Or Were Being Sent From, Or
Received At Any Place Within California ....................................3

        5.   Issue No. 5:  Plaintiff Is Entitled To $5,000 In Statutory
Damages ...................................................................................8

    B.   The Court Should Grant Summary Judgment In Favor Of Plaintiff
On His Claim Under Cal. Penal Code § 635 .................................................9

    C.   The Court Should Grant Summary Judgment In Favor Of Plaintiff
On NaviStone's Counterclaim For Declaratory Relief ...............................10

        1.   Issue No. 1: The Court Already Rejected NaviStone's
Arguments That Moosejaw's Privacy Policy Serves As A
Defense Based On CalOPPA ...................................................12

        2.   Issue No. 2: NaviStone Is Seeking An Improper Advisory
Opinion, As The Compliance Of Moosejaw's Privacy Policy
With CalOPPA Has No Bearing On Plaintiff's Claims ..............14

        3.   Issue No. 3: The Privacy Policy Contains False Information
And Fails To Comply With CalOPPA .......................................16

        4.   Issue No. 4: CalOPPA Does Not Provide A Safe Harbor For
CIPA Violations ......................................................................17

        5.   Issue No. 5: CIPA Sections 631 And 635 Apply To Plaintiff's
Website Communications, For The Purposes Of The
Counterclaim ..........................................................................20

        6.   Issue No. 6: CIPA Section 632 Does Not Apply To Plaintiff's
Website Communications, For The Purposes Of The
Counterclaim ..........................................................................22

III. CONCLUSION ...........................................................................................................23

1
2

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Ades v. Omni Hotels Mgmt. Corp.*,
  46 F. Supp. 3d 999 (C.D. Cal. Sept. 8, 2014) ........................... 21

*AngioScore, Inc. v. TriReme Medical, Inc.*,
  87 F. Supp. 3d 986 (N.D. Cal. 2015) ........................... 13

*Apple Inc. v. Superior Court*,
  56 Cal.4th 128 (2013) ........................... 11, 12, 19, 20

*Boise Cascade Corp. v. U.S. E.P.A.*,
  942 F.2d 1427 (9th Cir. 1991) ........................... 20

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  2016 WL 3543699 (S.D. Cal. June 29, 2016) ........................... 21

*Brown v. Google*,
  2021 WL 949372 (N.D. Cal. Mar. 12, 2021) ........................... 2

*Campbell v. Facebook Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ........................... 19, 20

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013) ........................... 14

*Crown Tree Service, Inc. v. Atain Specialty Ins. Co.*,
  2016 WL 9176565 (N.D. Cal. Nov. 8, 2016) ........................... 14

*Diamond v. Charles*,
  476 U.S. 54 (1986) ........................... 14

*Flanagan v. Flanagan*,
  41 P.3d 575 (Cal. 2002) ........................... 18

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. Jan. 21, 2015) ........................... 2, 22

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ........................... 2, 22

*In re Google Inc.*,
  2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........................... 2, 17, 18, 22

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (Cal. 2006) ........................... 21

*Legg v. PTZ Ins. Agency, Ltd.*,
   2018 WL 3869970 (N.D. Ill. Aug. 15, 2018) ........................................................................ 8

*Luis v. Zang*,
   833 F.3d 619 (6th Cir. 2016) ................................................................................... 2, 22

*Matera v. Google Inc.*,
   2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ...................................................................... 19

*Matera v. Google*,
   2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ................................................................... 2, 22

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................... 9, 11

*MHC Fin. Ltd. P'Ship v. City of San Rafael*,
   2006 WL 8431310 (N.D. Cal. Jan. 27, 2006) .................................................................... 13, 14

*Moore v. Dish Network LLC*,
   57 F. Supp. 3d 639 (N.D.W.V. 2014) .............................................................................. 8

*Moreno v. Valenzuela*,
   2017 WL 1534276 (E.D. Cal. Apr. 28, 2017) ....................................................................... 1

*People v. Bustamante*,
   57 Cal. App. 4th 693, 67 Cal. Rptr. 2d 295 (1997) ................................................................ 20

*People v. Hagedorn*,
   127 Cal. App. 4th 734 (2005) ...................................................................................... 2

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*,
   2018 WL 6179094 (N.D. Ill. Nov. 27, 2018) ....................................................................... 8

*Rah v. Asiana Airlines, Inc.*,
   2018 WL 3972031 (N.D. Cal. Aug. 20, 2018) ...................................................................... 13

*Sorenson v. Secretary of Treasury*,
   475 U.S. 851, 106 S. Ct. 1600, 89 L.Ed.2d 855 (1986) ............................................................. 20

*Surfvivor Media, Inc. v. Survivor*,
   406 F.3d 625 (9th Cir. 2005) ...................................................................................... 15

*Thomas v. Anchorage Equal Rights Com'n*,
   220 F.3d 1134 (9th Cir. 2000) ........................................................................ 14, 16, 17, 23

*Thomas v. Bible*,
   983 F.2d 152 (9th Cir. 1993) .................................................................................. 13, 20

*U.S. v. Alexander*,
    106 F.3d 874 (9th Cir. 1997)..................................................................... 12, 20

**STATUTES**

Cal. Bus. & Prof. Code § 22575 ................................................................... 10

Cal. Bus. & Prof. Code § 22575(a) ............................................................... 19

Cal. Bus. & Prof. Code § 22578 ................................................................... 19

Cal. Penal Code § 7 ...................................................................................... 2

California Penal Code § 631.................................................................Passim

California Penal Code § 635.......................................................... i, 1, 9, 10

California Penal Code § 637.2...................................................................... 8

**RULES**

Fed. R. Civ. P. 56 .......................................................................................... 1

I.    **INTRODUCTION**

Plaintiff Jeremiah Revitch ("Plaintiff" or "Revitch") hereby moves for summary judgment against Defendant NaviStone, Inc. ("Defendant" or "NaviStone") on his claims pursuant to the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635.  Plaintiff also moves for summary judgment as to NaviStone's Amended Counterclaim.  For the reasons set forth herein, Plaintiff's motion should be granted in full.

II.   **ARGUMENT**

   A.    **The Court Should Grant Summary Judgment In Favor Of Plaintiff On His Claim Under Cal. Penal Code § 631(a)**

Section 631(a) imposes liability, in relevant part, on "[a]ny person who, [1] by means of any machine, instrument, or contrivance, or in any other manner, …. [2] willfully and [3] without the consent of all parties to the communication, or in any unauthorized manner, [4] reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.  Cal. Penal Code § 631(a); *see also Moreno v. Valenzuela*, 2017 WL 1534276, at *7 (E.D. Cal. Apr. 28, 2017) (describing jury instruction for claim under § 631(a)).

Plaintiff moves for summary judgment with respect to the entirety of his claim against NaviStone under § 631(a) and seeks an award of statutory damages in the amount of $5,000. Alternatively, if the Court concludes that summary judgment of the entire claim is not warranted, Plaintiff seeks partial summary judgment with respect to each of the five issues itemized below.

   1.    **Issue No. 1**: **NaviStone's Software Is A "Machine, Instrument … Contrivance," Or "Other Manner" Under § 631(a)**

"NaviStone's software allows unidentifiable website visitors to be matched with postal names and addresses."  Ex. 1, Kavanagh Dep., 177:11-16; *see also* Ex. 6, "NaviStone Boilerplate," NAVISTONE_002358.  To accomplish this objective, "NaviStone provides its clients with JavaScript code which clients' may insert into the pages of their websites," and which "runs on the website visitor's browser unless the browser is set to prevent that activity."  Amended Answer,

¶¶ 15, 31 (Dkt. No. 75).  As explained in Section II.A.2. below, NaviStone admits that this code monitors the communications of visitors to websites such as Moosejaw.com.

NaviStone's code qualifies as a "machine, instrument … contrivance," or "other manner" within the meaning of § 631(a).  "The California Supreme Court's repeated finding that the California legislature intended for CIPA to establish broad privacy protections supports an expansive reading of the statute."  *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013).  Thus, like its federal counterpart, CIPA applies to "new technologies" such as internet monitoring software.  *See Matera v. Google*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *cf. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) (software plug-ins that tracked internet usage actionable under CIPA); *Brown v. Google*, 2021 WL 949372, at *16 (N.D. Cal. Mar. 12, 2021) (surreptitious collection of browsing data from Google Analytics and other applications covered by CIPA); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1087 (N.D. Cal. Jan. 21, 2015) (monitoring software governed by federal wiretap law); *Luis v. Zang*, 833 F.3d 619, 634 (6th Cir. 2016) (same).

### 2. <u>Issue No. 2</u>:  NaviStone Acted Willfully

Under the California Penal Code, "[t]he word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to.  It does not require any intent to violate law, or to injure another, or to acquire any advantage."  Cal. Penal Code § 7.  "The word 'willfully' as generally used in the law is a synonym for 'intentionally,' i.e., the defendant intended to do the act proscribed by the penal statute."  *People v. Hagedorn*, 127 Cal. App. 4th 734, 744 (2005).

There is no genuine dispute that the conduct at issue here was intentional.  NaviStone states, "[a]t all times relevant hereto, NaviStone was acting as the authorized marketing service provider for the purpose of receiving and analyzing communications from website visitors on Moosejaw's behalf, and undertook such activities for the sole and exclusive benefit of Moosejaw." Amended Answer, Twenty First Affirmative Defense (Dkt. No. 75).  NaviStone's contract with Moosejaw required NaviStone to "collect[] web browsing behavior 24x7x365."  Ex. 1, Kavanagh

1   Dep., 162:18-163:1; *see also* Ex. 14, MJ-Revitch-0003820; Ex. 1, Kavanagh Dep., 95:15-96:2

2   (authenticating exhibit).  There is no serious argument that the conduct at issue here was the result

3   of an inadvertent mistake.

4          **3.**     **Issue No. 3**:  **NaviStone Acted Without Plaintiff's Consent**

5         Plaintiff's uncontroverted testimony is that he visited Moosejaw.com several times

6   throughout early and mid- 2017, but he did not learn about the wiretapping until December 2017.

7   Ex. 4, Revitch Dep., 64:17-65:4; *see also* Dep. Ex. 7, PLF00001 (disclosing internet history in

8   2017); Ex. 4, Revitch Dep., 98:12-99:5 (authenticating Depo Ex. 41); *id.*, 120:10-121:24 (testifying

9   about visits to Moosejaw.com 2017); *id.*, 124:14-21 (same).  Plaintiff further testified that when he

10  visited Moosejaw.com in 2017, he was unaware of the wiretapping and in all reasonable

11  probability would not have visited Moosejaw.com if had known about the wiretapping.  Ex. 4,

12  Revitch Dep., 319:1-320:2.  NaviStone has speculated that Plaintiff may have learned about the

13  wiretapping in 2017 by reading two articles about NaviStone that appeared in a website called

14  Gizmodo.com.  However, Plaintiff testified he never read them, and in any event, neither of the

15  articles disclosed that Moosejaw.com used NaviStone.  Ex. 4, Revitch Dep., 227:11-20; Ex. 8

16  Gizmodo Articles; *see also* Ex. 1, Kavanagh Dep., 216:5-217:24 (authenticating articles).  Thus,

17  Plaintiff could not have learned about the wiretapping through the Gizmodo articles.

18        NaviStone relies on Moosejaw's privacy policy in support of its consent defense.  *See*

19  NaviStone's Amended Answer, Seventh Affirmative Defense (Dkt. No. 75).  However, Plaintiff

20  testified that he never read it, and NaviStone has no evidence to the contrary.  *See* Ex. 4, Revitch

21  Dep., 118:16-19 ("Q: … So have you ever reviewed the Moosejaw privacy policy?  A: I have

22  not."); *id.*, 213:10-24.

23        **4.**     **Issue No. 4**:  **NaviStone Read The Contents Or Meaning Of Visitors' Communications On Moosejaw.Com While The Same Were In Transit, Or Were Being Sent From, Or Received At Any Place Within California**

25        NaviStone's Amended Answer and Amended Counterclaim contains numerous admissions

26  that the purpose of the software was to obtain and "analyze" communications of visitors to the

27  website Moosejaw.com:

- NaviStone Amended Answer ¶ 11 ("communications from visitors to Moosejaw's website are received, stored, and analyzed ….")

- NaviStone Amended Counterclaim, ¶ 30 ("NaviStone … works on behalf of e-commerce retailers for the purposes of analyzing website visitor communications that it is authorized by those retailers to receive directly from visitors to their websites.");

- *Id.*, ¶ 42 ("After receiving these communications from website visitors, NaviStone, on behalf of Moosejaw, analyzes those anonymous communications at its offices in Ohio.").

- NaviStone's Am. Answer, 21st Affirmative Defense (""[A]t all times relevant hereto," NaviStone's software was used "for the purpose of receiving and analyzing communications from website visitors on Moosejaw's behalf.").

NaviStone analyzes website visitor communications "to assess whether a particular anonymous visitor would welcome—and therefore more likely respond to—a promotional postcard offering, for example, a discount on purchases from Moosejaw." Am. Countercl. (Dkt. No. 75), ¶ 43; *see also* Ex. 1, Kavanagh Dep., 20:2-13 (NaviStone "collects browsing data around how someone is visiting the website, scores that data to determine how interested they are in a website and how likely they are to respond to direct mail."); *id.*, 169:10-12 ("Q: Is it correct that NaviStone analyzes browsing behavior?  A: Yes.").  These postcards could be tailored to a website visitor's particular browsing activity on Moosejaw.com.  For example, as NaviStone's CEO Larry Kavanagh testified:

> Q:  Let's say an anonymous visitor looks only at women's clothing on Moosejaw.com.  Can NaviStone arrange for that person to receive a postcard that advertises women's clothing sold on Moosejaw.com?
>
> A:  Yes.

Ex. 1, Kavanagh Dep., 91:23-92:3.  Or, if an anonymous visitor looked at a certain clothing brand, such as North Face for example, then the next day, that visitor could receive a postcard in the mail advertising the same brand he or she was just looking at.  *Id.*, 92:15-93:7.

Apropos of a wiretapping case like this case, NaviStone's CEO and other officers refer to the company's monitoring activities as "listening" in on websites:

> Q:   What does "NaviStone 'Listening' process" mean?
>
> A:   "NaviStone Listening" refers to our tag being on a client's website where the – where the – you know, the website would be sending data to our servers, but we would not be engaged yet in an active mailing program. So it means more of like a passive mode as opposed to an actively mailing mode.
>
> Q:   In that mode is NaviStone analyzing whether website browsers intend to buy something without sending the postcard?
>
> A:   Correct.  We are creating all of our summaries.  We are doing all of the things that we would do if we were engaged in active mode but not actually sending anything out.

*Id.*, 135:3-18.

> Q:   Do you know approximately how long you or others at NaviStone had used the verb "listen" or "listening" to describe any part of what NaviStone does?
>
> A:   A long time.  A long time.

*Id.*, 137:2-6.

NaviStone's CEO and its CTO also made numerous admissions concerning the nature of data collected from visitors to Moosejaw.com.  NaviStone's software consists of several integrated parts that work together.  Ex. 3, White Dep., 39:12-41:23; 41:24-42:4; 55:11-19.  NaviStone's CTO used the analogy of "pitchers" and "catchers" in baseball to describe what those parts do.  "Most of the work happens in the JavaScript" portion of the software (also called "OneTag") which is installed on Moosejaw.com and acts as the "pitcher."  *Id.* at 150:19.[1]  The JavaScript determines what web browsing data to collect, collects the data, and then "pitches" the data to other "catcher" components of the software.  *See id.*, 40:11-41:4; 80:24-81:22; 136:23-137:8; 138:3-10.  NaviStone has twice admitted that the JavaScript code collects data from website users in "real time."  Ex. 9, Discovery Letter, at p. 4 (Dkt. No. 112) (NaviStone's "front end" code [i.e. JavaScript] "interacts

---

[1] *See also* Ex. 1, Kavanagh Dep., 63:10-13 (explaining "OneTag" is "the same as the JavaScript code that gets put on Moosejaw's website").

in real-time with a Moosejaw web visitor"); Ex. 10, NaviStone's Resp. to Request for Inspection No. 1 ("NaviStone responds that it has already produced any source code [i.e., the JavaScript code] that operated in real time on visitors to www.Moosejaw.com").

The JavaScript component collects "over 200 different data elements" from a web browser's interactions on Moosejaw.com.  Ex. 3, White Dep., 165:5-7.  A 2017 document from NaviStone states, "[s]ample data collected from the visitor session include browser type, URL, user agent, IP address, email address, land address, pages visited and visit actions.  Some of these actions could include button clicks, [and] form submissions[.]"  Ex. 11, Cybersecurity Questionnaire, at NAVISTONE_004827; *see also* Ex. 3, White Dep., 84:19-86:2 (testifying regarding Cybersecurity Questionnaire).[2]  Those data elements are processed into 18 higher-level data points, which are subjected to a "scoring process" to determine whether to send a postcard to a website visitor.  Ex. 2, 30(b)(6) Dep., 45:17-46:6; *see also id.* at 39:21-40:17 (describing scoring process).

During his deposition, NaviStone's 30(b)(6) witness also provided a long list of the data elements NaviStone's software collected from visitors to Moosejaw.com.  The list includes things like which webpages and products a customer viewed, items the customer placed in a shopping cart, information about search terms the customer used, and purchase order information:

> Q:      So which [data elements] are you seeing?
>
> …
>
> A:      So homepage, the – you – you will see in the code that it's looking for …
>         the page that's being displayed to the – to the – really, to the browser.
>
> …
>
>         The second data element is category.  It is asking for – so first, it's – it's
>         looking for, in the URL, /shop/content_LP-AM.  And if it finds that, then
>         it is classifying that as a – as a – as a category page.
>
> …

---

[2] The only item in the aforementioned list that NaviStone denied ever collecting from visitors to Moosejaw.com are IP addresses.  Ex. 2, 30(b)(6) Dep., 32:10-33:13.

1    We are getting the product name, and we're looking on the – again,
2    looking on the – on the page that's displayed for product name.  We're
     getting the image path of whatever product image is shown on the page,
3    and also getting the canonical URL.

4    …

5    Then we have – the next thing that we're – the next data element we're
     collecting is cart items, and we're looking for something that has cart-
6    column-info in it in order to determine that's what that is.

7    Then we are reading out of – you know, from what the … website is
8    displaying, we're reading out a data element that Moosejaw calls section-
     table-prod-name.  And inside of that array, we're reading product ID,
9    product name, quantity, unit price, image path.  We're reading a field
     called details that is really indicating whether something is in stock or out
10   of stock.

11   …

12   And we're reading what the … order total that is being displayed on that --
13   on that card is.

     Next one is checkout visit.  And we're looking for something in the URL
14   that says ordershippingbillingview – /ordershippingbillingview.  We are,
15   from inside the – the array, getting – reading in a shipping cost and
     reading in order total.
16

17   …

18   Checkout complete.  We're looking for something that has order shipping
     billing confirmation view in the URL.  We're getting the order total and
19   the – the Moosejaw designated order ID associated with that order.  We
     are looking to see if a – if a page is the result of – is a – is a search results
20   page.

21   So we're looking for something that has /searchdisplay in it, and also has
     the parameter that Moosejaw would have put on that page that says – that
22   is called search term, and determining that search term is not blank.  Then
     provided that – that a page shows that, we are recording the – we are
23   putting in the search phrase field, search term.

24   We're also putting – we're looking for something called search total
25   count.  That's a field that they combine a search total count, which would
     be the number of different items that the particular search returned on a
26   search results page.

27   …

28

> The next – the next one is contact event.  That occurs on a change when a – when a change has occurred in a field.  And so it's recording contact data when there's a change in a field.
>
> Then as part of that, as a part of that is any page that we had previously categorized as home, product, or category.  If there was a click event on that page, then we are essentially checking to see if that was a click to add something to cart, and if so, recording it as a – an add to cart event.  And you may recall that was a – one of the – the first elements in the model was, did a visitor place an item into their cart on the Moosejaw website?

Ex. 2, 30(b)(6) Dep., 58:21-63:23; *see also id.* at 85:9-17 (NaviStone collected search strings used by website visitors).

### 5. <u>Issue No. 5</u>:  Plaintiff Is Entitled To $5,000 In Statutory Damages

Summary judgment in favor of the plaintiff is proper where, as here, statutory damages can be readily calculated.  *See*, *e.g.*, *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 2018 WL 6179094, at *1, 3 (N.D. Ill. Nov. 27, 2018) (entering judgment for plaintiff based on number of calls made and fixed statutory damages under the TCPA); *Legg v. PTZ Ins. Agency, Ltd.*, 2018 WL 3869970, at *4 (N.D. Ill. Aug. 15, 2018) (same); *Moore v. Dish Network LLC*, 57 F. Supp. 3d 639, 657 (N.D.W.V. 2014) (same).  California Penal Code § 637.2 provides that "any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: (1) [f]ive thousand dollars ($5,000) [or] (2) [t]hree times the amount of actual damages, if any, sustained by the plaintiff."  "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."  *Id.* § 637.2(c).  There is no genuine dispute that Plaintiff was wiretapped at least once in 2017, entitling him to $5,000 in statutory damages.

<u>First</u>, the uncontroverted evidence is that NaviStone constantly collected and analyzed web browser data from Moosejaw.com in 2017.  NaviStone's contract with Moosejaw required NaviStone to "collect[] web browsing behavior 24x7x365," meaning "all the time, not just some of the time."  Ex. 1, Kavanagh Dep., 162:18-163:8; *see also* Ex. 13, MJ-Revitch-0003820; Ex. 1, Kavanagh Dep., 95:15-96:2 (authenticating exhibit).  NaviStone likewise states in its Amended

Answer that it received and analyzed communications on Moosejaw.com "at all times relevant hereto." Am. Answer, Twenty-First Affirmative Defense (Dkt. No. 75). There were no significant outages of service that would have prevented NaviStone from collecting web browser data in 2017. *See* Ex. 1, Kavanagh Dep., at 164:18-165:19.

Second, there also is no genuine dispute that Plaintiff visited Moosejaw.com several times throughout 2017. He produced a screenshot of his internet history, and provided related testimony, establishing that he visited Moosejaw.com eight different times between January 8, 2017 and mid-December 2017. Ex. 7, PLF00001; Ex. 4, Revitch Dep., 98:20-99:5; 121:17-20; *see also* Ex. 5, Revitch 2nd Dep., 11:24-12:1; 40:9-41:4. Moosejaw also produced its own records of a visit by Plaintiff to Moosejaw.com on March 1, 2017, which is consistent with Plaintiff's own records. *Compare* Ex. 12, Moosejaw records, MJ-Revitch 26476 *with* Ex. 7, PLF00001; *see also* Ex. 4, Revitch Dep., 147:23 (stating MJ-Revitch 26476 "is a customer record from Moosejaw.com"); Patterson Decl., ¶ 8 (Dkt. No. 142-14) (authenticating Moosejaw records). In light of the above evidence, the most that NaviStone could hope to do is raise "some metaphysical doubt" that Plaintiff was wiretapped, but that is not enough to defeat summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, Plaintiff is entitled to summary judgment of his entire claim under § 631(a), and $5,000 in statutory damages.

## B. The Court Should Grant Summary Judgment In Favor Of Plaintiff On His Claim Under Cal. Penal Code § 635

Plaintiff moves for summary judgment with respect to the entirety of his individual claim on Cal. Penal Code § 635. *See* SAC ¶¶ 82-91. Section 635(a) is simple. It imposes liability on "[e]very person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another." Cal Penal Code § 635(a) (emphasis added).

It is undisputed that NaviStone furnished Moosejaw with ████████████████████ ████████████████████████████████████████████████████

1
2
3
4
5
6
7
8
9



10   at MJ-(Revitch)-003820.  NaviStone even conceded this in its twenty-first affirmative

11   defense.  *See* NaviStone's Amended Answer, Dkt. 75 at 31 ("At all times relevant hereto,

12   NaviStone was acting as the authorized marketing service provider for Moosejaw for the purpose

13   of receiving and analyzing communications from website visitors on Moosejaw's behalf, and

14   undertook such activities for the sole and exclusive benefit of Moosejaw.").  Further, "NaviStone's

15   code is a 'device' that is 'primarily or exclusively designed' for eavesdropping.  That is, the

16   NaviStone code is designed to gather PII, including keystrokes, mouse clicks, and other electronic

17   communications."  SAC ¶ 86.  The same evidence set forth above in support of summary judgment

18   on Plaintiff's § 631(a) claim, also establishes that NaviStone's software is primarily or exclusively

19   designed or intended for eavesdropping.  *See supra* Argument § II.A.  Summary judgment on

20   Plaintiff's § 635 claim is therefore appropriate.

21       **C.    The Court Should Grant Summary Judgment In Favor Of
                Plaintiff On NaviStone's Counterclaim For Declaratory Relief**

22       NaviStone's Amended Counterclaim brings a single Claim for Declaratory Judgment,

23   namely that "[t]o the extent California law applies, NaviStone … seeks a declaration that the

24   California Online Privacy Protection Act (CalOPPA), rather than the California Invasion of

25   Privacy Act ('CIPA'), exclusively governs [Plaintiff's] claims, and that CalOPPA has not been

26   violated here."  Am. Countercl., at Preamble (Dkt. 75).  More specifically, the Amended

27   Counterclaim alleges that "[i]n 2003, California enacted CalOPPA, Cal. Bus. & Prof. Code §

28

22575 *et seq.*," under which "websites must publish a privacy policy," to be linked "on the website's home page," that "inform[s] visitors of the categories of personally identifiable information ('PII') collected by the website, the categories of third parties with whom the PII may be shared, and whether and how a visitor can opt out of such sharing." *Id.* ¶¶ 57-60.  The Amended Counterclaim further alleges that "at all relevant times to this lawsuit, Moosejaw.com maintained a privacy policy" that purportedly "fully complies with CalOPPA," in that it allegedly "describes the way in which Moosejaw collects browsing data," "describes how this data will be shared with third-party service providers for advertising purposes," and "describes the types of activities in which [Defendants] are alleged to have engaged." *Id.* ¶¶ 61, 68-73.  NaviStone then posits that Moosejaw's "Privacy Policy is fully compliant with CalOPPA" and that "[i]n this action, the requirements of CalOPPA govern the communications alleged by [Plaintiff] Revitch to the exclusion of his CIPA claims." *Id.* ¶¶ 84, 90.  Lastly, in the "Relief Sought" portion of the Amended Counterclaim, NaviStone requests that the Court "[d]eclare that because NaviStone's conduct is fairly disclosed by Moosejaw's CalOPPA compliant privacy policy" and find that "CalOPPA provides a safe harbor preventing any invasion of privacy action based on said conduct." *Id.*, Relief Sought.

NaviStone does not explain *how or why* CalOPPA purportedly provides a safe harbor to the conduct at issue, apart from generalized public policy arguments.  NaviStone argues that "in passing CalOPPA, the [California] Legislature did not determine that a prohibition on data collection by websites was appropriate," and the California Legislature instead "determined that disclosure [is] the best mechanism [for] regulating online privacy." *Id.* ¶¶ 79-81.  NaviStone also references an unrelated case, *Apple Inc. v. Superior Court*, 56 Cal.4th 128 (2013), that was decided under the Song-Beverly Credit Card Act of 1971.  *Id.* ¶ 3.  No other authority is provided as to why a safe harbor would apply.

Plaintiff moves for summary judgment with respect to the entirety of NaviStone's Amended Counterclaim.  Alternatively, if the Court concludes that summary judgment of the entire Amended Counterclaim is not warranted, Plaintiff seeks partial summary judgment with respect to each of the six issues itemized below.

1.   **Issue No. 1**: The Court Already Rejected NaviStone's Arguments That Moosejaw's Privacy Policy Serves As A Defense Based On CalOPPA

These issues are not new to the Court.  On February 27, 2019, on the very first page of NaviStone's Motion to Dismiss Plaintiff's First Amended Class Action Complaint, one of the "issues to be decided" identified by NaviStone is "[w]hether Moosejaw's privacy policy defeats Plaintiff's claims based upon [CalOPPA], with which Moosejaw complied."  Mot. to Dismiss FAC at 8.  In support of this position, NaviStone argued that "CalOPPA requires … [that] websites must publish a privacy policy informing visitors of the categories of PII the website collects," and that "[c]onsistent with CalOPPA's requirements, Moosejaw's privacy policy expressly describes the collection and sharing of clickstream data with third-party service providers for [the] purpose of advertising, just as alleged here."  *Id.* at 8.  On May 1, 2019, the Court granted NaviStone's motion, but purely on the basis of Article III standing – *not* CalOPPA or the privacy policy – and gave Plaintiff leave to amend.  *See* Order Dismissing First Amended Complaint (Dkt. 40).

Plaintiff then filed the operative Second Amended Complaint, and NaviStone moved to dismiss on June 5, 2019, bringing the exact same arguments that CalOPPA defeats Plaintiff's claims.  *See* Mot. to Dismiss SAC at 7 (arguing, as before, that "CalOPPA requires … that websites must publish a privacy policy informing visitors of the categories of PII the website collects," and that "[c]onsistent with CalOPPA, Moosejaw's privacy policy expressly describes the collection and sharing of clickstream data with third-party service providers").  On October 23, 2019, this Court granted in part and denied in part NaviStone's motion.  *See* Order Re Motions to Dismiss (Dkt. 64).  The Court dismissed Plaintiff's claim under Section 632 of CIPA, but denied NaviStone's motion as to the remainder of Plaintiff's claims.  *See id.*

If NaviStone were correct that "Moosejaw's privacy policy defeats Plaintiff's claims based upon [CalOPPA]," then the Court would have reached that conclusion and dismissed Plaintiff's claims with prejudice.  But no such finding was made.  In fact, the Court did not apply CalOPPA as a safe harbor to Plaintiff's claims.  That is because compliance with CalOPPA is not a defense.  In any event, the "law of the case doctrine" now applies, and as such the Court is barred from reconsidering these issues outside a motion for reconsideration.  *See U.S. v. Alexander*, 106 F.3d

874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.") (quotations omitted); *see also Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993) ("[T]he district court's failure to apply the doctrine of law of the case constitutes an abuse of discretion.").

Nor is this issue appropriate for reconsideration.  Northern District of California Local Rule 7-9 governs motions for reconsideration, which provides that no party may move "without first obtaining leave of Court to file the motion."  Local Rule 7-9(a).  If leave is granted, then the party must then file a separate motion for reconsideration and specifically show reasonable diligence in bringing the motion and one of the following:

> (1)   That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2)   The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3)   A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Local Rule 7-9(b).  The rule further prohibits repeating arguments made in earlier briefs on pain of sanctions.  *See* Local Rule 7-9(c).  It is improper to bypass Local Rule 7-9 by simply rehashing arguments that were unsuccessfully made before.  *See Rah v. Asiana Airlines, Inc.*, 2018 WL 3972031, at *1 n.1 (N.D. Cal. Aug. 20, 2018) (violation of L.R. 7-9 "constitute[d] a separate basis for denying [plaintiff's] ex parte application"); *AngioScore, Inc. v. TriReme Medical, Inc.*, 87 F. Supp. 3d 986, 997 n.3 (N.D. Cal. 2015) (arguments raised in a motion to dismiss that were unsuccessfully raised in connection with prior motion for leave to amend violated L.R. 7-9); *MHC Fin. Ltd. P'Ship v. City of San Rafael*, 2006 WL 8431310, at *2 (N.D. Cal. Jan. 27, 2006) ("Because plaintiffs merely seek to rehash issues already decided by this court and did not seek

leave to file a motion for reconsideration pursuant to Civ LR 7-9, the court sees no reason to revisit its previous decision.").

This issue has already been resolved. The privacy policy on Moosejaw.com does not serve as a defense or safe harbor to Plaintiff's claims based on CalOPPA. The Court can not and should not revisit this issue in lieu of a motion for reconsideration (which is not appropriate here).

2.   **Issue No. 2**: NaviStone Is Seeking An Improper Advisory Opinion, As The Compliance Of Moosejaw's Privacy Policy With CalOPPA Has No Bearing On Plaintiff's Claims

The claims brought by Plaintiff Revitch in this matter are based on the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 635. *See* Order Re Motions to Dismiss (Dkt. 64). The prima facie case for each of these claims is set forth above, *see supra* Argument §§ II.A-B, none of which concern the presence of a privacy policy, or the compliance of that privacy policy with CalOPPA. Stated otherwise, the Moosejaw privacy policy and CalOPPA compliance is irrelevant to Plaintiff's claims. NaviStone is seeking an improper advisory opinion on this issue.

It is black-letter law that "Article III of the [U.S.] Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 570, U.S. 693, 704 (2013). The U.S. Supreme Court explains that "for a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm." *Id.* The Supreme Court further explains that this constitutional requirement "'serves to prevent the judicial process from being used to usurp the powers of the political branches.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013)). The Supreme Court also cautions judges that "'[t]he presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself.'" *Id.* (quoting *Diamond v. Charles*, 476 U.S. 54, 54 (1986)). The Ninth Circuit has similarly held that advisory opinions are prohibited absent a live case or controversy: "[o]ur role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted [to] the judiciary in Article III of the constitution." *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138 (9th Cir. 2000); *see also Crown Tree Service, Inc. v. Atain Specialty Ins. Co.*,

1    2016 WL 9176565, at *3 (N.D. Cal. Nov. 8, 2016) (Chhabria, J.) (declining to issue advisory

2    opinions in connection with a motion for summary judgment).

3           Here, as discussed above, Section 631(a) imposes liability, in relevant part, on "[a]ny

4    person who, [1] by means of any machine, instrument, or contrivance, or in any other manner, ….

5    [2] willfully and [3] without the consent of all parties to the communication, or in any unauthorized

6    manner, [4] reads, or attempts to read, or to learn the contents or meaning of any message, report,

7    or communication while the same is in transit or passing over any wire, line, or cable, or is being

8    sent from, or received at any place within this state." *See supra* Argument §§ II.A-B (quoting Cal.

9    Penal Code § 631(a)).  Plainly, the privacy policy on Moosejaw.com – and whether it complies

10   with CalOPPA – has nothing to do with this analysis.

11          Furthermore, there is no evidence that the privacy policy was reviewed by Plaintiff Revitch,

12   or any other class member.  At his deposition, Mr. Revitch testified that he had never read

13   Moosejaw's privacy policy when he visited Moosejaw.com, and he only read it after commencing

14   the present lawsuit.  *See* Ex. 4, Revitch Dep., 118:16-19 ("Q: … So have you ever reviewed the

15   Moosejaw privacy policy?  A: I have not."); *see also id.*, 213:10-24.[3]  In fact, NaviStone has not

16   produce any evidence during discovery that *anyone* has ever read Moosejaw's privacy policy.  *See*

17   Ex. 14, NaviStone Resp. to Interrog. No. 16 (stating NaviStone "does not know if or when" any

18   individuals on the Computech List "viewed or read Moosejaw's privacy policy"); ████

19   ████████████████████████████████████████████████

20   ████████████████████████████████████████████

21   ██████████████████████████████████████████████████

22   ██████████████████████████

23          In sum, the presence of a privacy policy on Moosejaw.com, and its compliance with

24   CalOPPA, is not relevant to establishing the elements of Plaintiff's CIPA claims.  A ruling on

25

26   ───────────────────────────

27   [3] In response, NaviStone may speculate that Mr. Revitch's testimony that he did not read the
     privacy policy somehow mistaken or incorrect, but "speculation is not evidence" and therefore
     cannot generate a genuine issue of material fact on summary judgment.  *Surfvivor Media, Inc. v.
28   Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) ("[S]peculation is not evidence ….").

1    whether the privacy policy is compliant with CalOPPA would be an improper advisory opinion.

2    *See Thomas*, 220 F.3d at 1138.

3        **3.    Issue No. 3: The Privacy Policy Contains False**
              **Information And Fails To Comply With CalOPPA**

4

5        As discussed above, it is Plaintiff's position that a declaratory judgment on the compliance

     of the Moosejaw.com privacy policy with CalOPPA would be an improper advisory opinion.  *See*

6    *supra* Argument § C.2.  In the alternative, to the extent that the Court considers the compliance of

7    the privacy policy compliance with CalOPPA (and it should not), the Court should find that the

8    privacy policy contains false information and is thus noncompliant.

9        NaviStone's Counterclaim alleges that "CalOPPA requires … [that] websites must publish

10   a privacy policy informing visitors of the categories of PII the website collects," and that

11   "[c]onsistent with CalOPPA's requirements, Moosejaw's privacy policy expressly describes the

12   collection and sharing of clickstream data with third-party service providers for [the] purpose of

13   advertising."  Am. Countercl. at 8.  But that is incorrect.  In fact, the privacy policy that NaviStone

14   relies on in support of the Amended Counterclaim states: "We only share your Information with

15   reputable companies who provide products or services that we believe interest our customers."  *See*

16   Privacy Policy at p.2, Ex. I to Amended Counterclaim (Dkt. No. 75-9).  However, NaviStone's

17   CEO conceded that NaviStone does not provide any products or services to Moosejaw's customers.

18   Ex. 1, Kavanagh Dep., 30:23-24 ("Q: Does NaviStone offer any products or services directly to

19   retail consumers? A: No.").  Thus, the privacy policy is wrong.

20       Moreover, NaviStone's contract with Moosejaw required ███████████████████

21   ████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████

24   ████████████████████████████████████  *Id.*  However, the privacy policy on

25   ███████████████████████████

26   Moosejaw.com does not include NaviStone's mandatory language, and it never references the

27   collection of anonymous information.  *Compare with* Privacy Policy, Ex. I to Am. Countercl.  Nor

28   does the Moosejaw privacy policy state anywhere in plain English that Moosejaw allows

1    unidentifiable website visitors to be matched with postal names and addresses.  *See id.*; *see also*

2    Ex. 1, Kavanagh Dep., 177:9-178:10 (explaining that "NaviStone's software allows unidentifiable

3    website visitors to be matched with postal names and addresses, in a privacy-compliant manner, so

4    companies can send an individualized marketing message via direct mail," none of which is

5    mentioned in the Privacy Policy).

6            **4.    Issue No. 4: CalOPPA Does Not Provide A Safe Harbor**
                      **For CIPA Violations**

7            NaviStone has utterly failed to establish that CalOPPA provides a safe harbor to CIPA

8    claims, as a matter of law.  Nowhere in NaviStone's Amended Counterclaim does it explain why a

9    privacy policy would somehow preclude Plaintiff Revitch's causes of action.  NaviStone instead

10   merely just postulates that "Moosejaw's privacy policy fairly discloses the conduct that forms the

11   basis of Plaintiff's claims," and as a result "CalOPPA provides a safe harbor preventing any

12   invasion of privacy action based on said conduct."  Am. Countercl., Relief Sought.  To arrive at

13   this conclusion, NaviStone simply opines that "[c]riminalizing vast swaths of web activity, where

14   such activity is fully disclosed in compliance with CalOPPA, would render CalOPPA a nullity and

15   frustrate the purpose of the California Legislature."  *Id.* ¶ 89.  However, NaviStone fails to provide

16   any explanation why the existence of a privacy policy would preclude consumer claims under

17   CalOPPA.  *Id.*  Nor does NaviStone quote any such language from the text of the CalOPPA statute,

18   or cite to any provisions or authority demonstrating the presence of a safe harbor.  *See id.*

19   Unsurprisingly, NaviStone is wrong that a safe harbor applies.

20           This case is similar to *In re Google Inc. Gmail Litigation*, 2013 WL 5423918, at *1 (N.D.

21   Cal. Sept. 26, 2013), in which the plaintiffs brought causes of action based on "federal and state

22   anti-wiretapping laws" against Google for its alleged practice of "intercept[ing], read[ing], and

23   acquir[ing] content from emails that were in transit" in order to "provide targeted advertising."  *Id.*

24   In the court's order granting in part and denying in part defendant Google's motion to dismiss, it

25   rejected Google's argument that the privacy policy served as "consent" to the alleged wiretapping:

26           In its Motion to Dismiss, Google marshals both explicit and implied
             theories of consent.  Google contends that by agreeing to Google's
27           Terms of Service and Privacy Policies, Plaintiffs who are Gmail
             users expressly consented to the interception of their emails.  Google

28

1  further contends that because of the way that email operates, even
2  non-Gmail users knew that their emails would be intercepted, and
   accordingly that non-Gmail users impliedly consented to the
3  interception.  Therefore, Google argues that in all communications,
   both parties – regardless of whether they are Gmail users – have
4  consented to the reading of emails.  <u>The Court rejects Google's</u>
   <u>contentions with respect to both explicit and implied consent.</u>
5  Rather, the Court finds that it cannot conclude that any party – Gmail
   users or non-Gmail users – has consented to Google's reading of
6  email for the purposes of creating user profiles or providing targeted
   advertising.

7  *Id.* at *13 (internal citations omitted; emphasis added).  Moreover, the court in *Gmail* found that

8  CIPA was intended "to establish broad privacy protections [that] supports an expansive reading:"

9  [T]he California Supreme Court's repeated finding that the California
10  legislature intended for CIPA to establish broad privacy protections
   supports an expansive reading of the statute.  *See Flanagan*, 41 P.3d
11  575, 581 (Cal. 2002) ("In enacting [CIPA], the Legislature declared
   in broad terms its intent to protect the right of privacy of the people
12  of this state from what it perceived as a serious threat to the free
   exercise of personal liberties.  This philosophy appears to lie at the
13  heart of virtually all the decisions construing [CIPA].")

14  *Id.* at *21 (underlining added).  Further, the court noted that "the California Supreme Court

15  regularly reads statutes to apply to new technologies where such a reading would not conflict with

16  the statutory scheme."  *Id.*  Here, as well, CIPA applies to Internet communications, just as it

17  applies to emails and other electronic communications.  *See id.* at *20 (finding that "section 631 of

18  CIPA applies to email").

19  More recently, in *Hart v. TWC Product & Tech, LLC*, No. 4:20-cv-03842-JST, Order

20  Granting in Part and Denying in Part Motion to Dismiss, Dkt. 45 at 7-8 (N.D. Cal. Mar. 17, 2021),

21  Judge Jon S. Tigar rejected a similar "safe harbor" defense regarding the application to CalOPPA.

22  The *Hart* matter concerned Rule 23 class action claims that defendant TWC improperly "track[ed]

23  and s[old] the physical locations of the users of [the Weather Channel App for smartphones],

24  without those users'" permission, giving rise to claims for violation of constitutional privacy rights

25  and for unjust enrichment.  *Id.* at 1.  In rejecting the defendant's arguments that CalOPPA barred

26  the plaintiff's claims, Judge Tigar specifically noted that "[t]here is no indication that the

27  California Legislature intended CalOPPA to operate as a ceiling, rather than a floor, for privacy

28

protection" and that the defendant "TWC's asserted compliance with CalOPPA is not relevant to the present motion:"

> TWC's argument that its compliance with the California Online Privacy Protection Act ("CalOPPA") resolves the issue [of whether a reasonable expectation of privacy applies to plaintiff's constitutional privacy claim] misses the mark. <u>There is no indication that the California Legislature intended CalOPPA to operate as a ceiling, rather than a floor, for privacy protection.</u> Moreover, CalOPPA requires website operators to "conspicuously post" a privacy policy outlining collection and use of certain data. Cal. Bus. & Prof. Code § 22575(a). As explained above, there is no information in the record about TWC's posting of its privacy policy, conspicuous or otherwise. That Hart does not contest CalOPPA compliance does not serve as an admission where none of the claims relates to CalOPPA. <u>TWC's asserted compliance with CalOPPA is not relevant to the present motion.</u>

*Id.* at 7-8 (underling added).

Furthermore, the text of the statute demonstrates that the California Legislature did not intend for CalOPPA to totally cover the field of Internet privacy rights, subsuming other statutes in the process. Instead, CalOPPA narrowly provides that the statute only "supersedes and preempts all rules, regulations, codes, ordinances, and other laws adopted by a city, county, city and county, municipality, or local agency <u>regarding the posting of a privacy policy on an Internet Web site</u>." Cal. Bus. & Prof. Code § 22578 (underlining added). Had the California Legislature intended to preclude all other privacy-oriented consumer suits and causes of action, the text of the statute would have stated as much. Indeed, numerous courts in this District have applied CIPA to Internet communications subsequent to CalOPPA's enactment. *See In Re Yahoo Mail Litigation*, No. 5:13-cv-04980-LHK, Order on Motion to Dismiss, Dkt. 49 at 25 (N.D. Cal. Sept. 12, 2014) (denying motion to dismiss CIPA claim brought for interception of emails); *Matera v. Google Inc.*, 2016 WL 5339806, at *16 (N.D. Cal. Sept. 23, 2016) (same); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (denying motion to dismiss CIPA claim brought for interception of Facebook messages).

The only authority cited by NaviStone, *Apple, Inc. v. Superior Court*, 56 Cal. 4th 128 (2013), is inapposite. In *Apple*, the California Supreme Court held that a specific provision of the

Song-Beverly Credit Card Act of 1971, section 1747.08, which "prohibits retailers from requesting or requiring [a] cardholder to provide personal identification information" at the time of sale, does not apply to "online purchases in which the product is downloaded electronically." *Id.* at 843. Significantly, nowhere in its discussion of CalOPPA did the California Supreme Court find that CalOPPA would preclude all privacy-oriented consumer suits and causes of action. *See id.* at 854-857. To argue otherwise would be a gross misreading of the opinion. *See id.* The *Apple* matter only concerns a specific portion of the Song-Beverly Credit Card Act, as it pertains to online purchases, which is not at issue in this matter. Tellingly, NaviStone fails to cite any other relevant authority in support of its argument.

The law is clear. Compliance with CalOPPA is not a defense, does not offer a safe harbor, and is "not relevant" to Plaintiff's claims. *Hart*, No. 4:20-cv-03842-JST, Dkt. 45 at 7-8 (N.D. Cal. Mar. 17, 2021).

**5.**   <u>**Issue No. 5**</u>**: CIPA Sections 631 And 635 Apply To Plaintiff's Website Communications, For The Purposes Of The Counterclaim**

This Court already found that "Revitch's interaction with the Moosejaw website is a communication within the meaning of section 631" of CIPA. *See* Order Re Motions to Dismiss, at 2 (Dkt. 64). As such, the "law of the case" doctrine applies to that finding. *See U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997); *see also Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993). While the Court did not expressly reach the issue under Section 635 of CIPA, Plaintiff's communications with the Moosejaw website should also fall under Section 635 as well – there is no legal basis to conclude that Plaintiff's website interactions would fall under Section 631 but not Section 635. *See People v. Bustamante*, 57 Cal. App. 4th 693, 699, 67 Cal. Rptr. 2d 295, 298-99 (1997) ("For purposes of statutory construction, the various pertinent sections of all the codes must be read together and harmonized if possible."); *Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991) ("… [W]e must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent …."); *Sorenson v. Secretary of Treasury,* 475 U.S. 851, 860, 106 S. Ct.

1600, 89 L.Ed.2d 855 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning.").

Nonetheless, in an apparent attempt to escape liability under CIPA, NaviStone's Amended Counterclaim seems to be setting NaviStone up to argue that Ohio law, not California law, applies to Plaintiff's website communications – and thus CIPA does not apply.  *See* Am. Countercl., ¶ 33 ("In providing this service, NaviStone analyzes at its offices in Ohio anonymous clickstream communications …."); *id.* ¶ 34 ("NaviStone neither receives nor analyzes any such communications within the State of California."); *id.* ¶ 38 ("Instead, upon request from Moosejaw's servers, website visitors send communications to NaviStone at locations outside the State of California.").  However, NaviStone is wrong.

CIPA is a consumer protection law, which serves to protect California citizens accessing websites within California, even if the website operator is out of state.  "In applying CIPA, the [California Supreme C]ourt found that CIPA can apply in situations involving California plaintiffs – whose privacy rights the California legislature specifically intended to protect – and out-of-state defendants."  *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at \*5 (S.D. Cal. June 29, 2016) (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 115-28 (Cal. 2006)); *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1010 (C.D. Cal. Sept. 8, 2014) (rejecting argument that Nebraska had a greater interest than California in adjudicating CIPA claims of California residents).  In plain English, NaviStone appears to argue that (i) CIPA should not apply because Plaintiff's website communications are governed under Ohio law, but (ii) CalOPPA should apply to bar Plaintiff's under California law.  *See* Am. Countercl., ¶¶ 74, 90.  NaviStone cannot have it both ways.

Lastly, NaviStone's Amended Counterclaim alleges that CIPA does not apply to Internet communications because such communications are not mentioned in Sections 631 or 635, and were not addressed in any amendments.   *See* Am. Countercl., ¶¶ 6-8 ("CIPA §§ 631, 632, and 635 existed at the time CalOPPA was enacted.  Neither [of these provisions] have been amended for the purpose of addressing Internet communications specifically.").  That too is wrong.

Contrary to NaviStone's assertions, numerous courts have found that CIPA applies to "new technologies" such as email and Internet monitoring software. *See Matera v. Google*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *cf. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) (software plug-ins that tracked internet usage actionable under CIPA); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1087 (N.D. Cal. Jan. 21, 2015) (monitoring software a device under federal wiretap law); *Luis v. Zang*, 833 F.3d 619, 634 (6th Cir. 2016) (same). As Judge Koh explained when rejecting a similar argument advanced here, "the California Supreme Court has repeatedly found that the California Legislature intended CIPA to establish strong privacy protections" and "regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *Matera*, 2016 WL 8200619, at *19-20. Nor does it matter that later amendments to CIPA did not include the words "software" or "Internet." Judge Koh rejected that argument as well in *Matera*, explaining that legislative inaction is of "minimal value" unless there is evidence that the California Legislature affirmatively rejected amending CIPA to cover new technology. *Id.* at *21; *see also In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013) ("[T]he California Supreme Court's repeated finding that the California legislature intended for CIPA to establish broad privacy protections supports an expansive reading of the statute.").

### 6.   Issue No. 6: CIPA Section 632 Does Not Apply To Plaintiff's Website Communications, For The Purposes Of The Counterclaim

On October 23, 2019, this Court dismissed Plaintiff's claim for violation of CIPA Section 632. *See* Order Re Motions to Dismiss, at 4 (Dkt. 64) ("Even if Revitch could plausibly allege that NaviStone's code constitutes an 'amplifying or recording device [per section 632 of CIPA],' he cannot allege that his browsing activity and form field entries fall within the scope of confidential communications protected by section 632."). In turn, NaviStone's Amended Counterclaim notes that "Count II [for violation of CIPA section 632] was dismissed because the communications at issue were not 'confidential,' a required element of CIPA § 632." Am. Countercl., ¶ 2.

1   Accordingly, NaviStone is seeking an improper advisory opinion as it pertains to any claims

2   brought under CIPA section 632, as they are no longer at issue.  *See Thomas*, 220 F.3d at 1138.

3   **III.     CONCLUSION**

4            As explained herein, the Court should grant summary judgment in full in favor of Plaintiff.

5   In the alternative, the Court should grant summary judgment as to the issues identified above.

6

7

8

9   Dated:  April 1, 2021                         **BURSOR & FISHER, P.A.**

10                                                  By:  ___*/s/ Joel D. Smith*_____
                                                          Joel D. Smith
11

12                                                  L. Timothy Fisher (State Bar No. 191626)
                                                    Joel D. Smith (State Bar No. 244902)
13                                                  Neal J. Deckant (State Bar No. 322946)
                                                    1990 North California Boulevard, Suite 940
14                                                  Walnut Creek, CA  94596
                                                    Telephone: (925) 300-4455
15                                                  E-Mail: ltfisher@bursor.com
                                                           jsmith@bursor.com
16                                                         ndeckant@bursor.com

17                                                  **BURSOR & FISHER, P.A.**
                                                    Frederick J. Klorczyk III (State Bar. No. 320783)
18                                                  888 Seventh Avenue
                                                    New York, NY 10019
19                                                  Telephone: (646) 837-7150
                                                    Facsimile: (212) 989-9163
20                                                  E-Mail: fklorczyk@bursor.com

21                                                  **BURSOR & FISHER, P.A.**
                                                    Scott A. Bursor (State Bar No. 276006)
22                                                  2665 S. Bayshore Dr., Suite 220
                                                    Miami, FL 33133-5402
23                                                  Telephone: (305) 330-5512
                                                    Facsimile: (305) 676-9006
24                                                  E-Mail: scott@bursor.com

25                                                  *Attorneys for Plaintiff*

26

27

28